# IN THE COURT OF APPEALS OF IOWA

No. 19-1551
Filed January 8, 2020

**IN THE INTEREST OF J.E.,**
**Minor Child,**

**A.E., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Keokuk County, Daniel Kitchen, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Larry J. Brock of Brock Law Office, Washington, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Katie E.M. Lujan of Lloyd, McConnell, Davis & Lujan, L.L.P., Washington, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights. She claims she should have been granted an additional six months to achieve reunification with the child. We find an extension is not warranted and termination is in the best interests of the child. We affirm.

## I.      Background Facts & Proceedings

T.E. is the mother of J.E., born in 2015. The mother's husband, C.S., is the legal father of J.E. A.M. is the child's biological father. Both fathers have consented to termination of their parental rights.

The family came to the attention of the Iowa Department of Human Services (DHS) in August 2016 due to the mother's use of methamphetamine while caring for the child. The mother began voluntary services with DHS. On October 6, 2017, the child was placed with C.S. on a voluntary basis after the mother tested positive for methamphetamine. The mother later contested the removal, and the court ordered the child's placement in C.S.'s care. In late 2017, the paternity of the child was called into question by the mother. On December 10, the child was adjudicated in need of assistance (CINA). Paternity testing was ordered.

In January 2018, the parties stipulated to placing the child with the maternal grandmother.[1]

---

[1] Before the child's removal, the mother and child sometimes stayed with the maternal grandmother, including for several months between 2016 and 2017. The mother continued to stay at the maternal grandmother's house periodically throughout the CINA proceedings.

In February, C.S. was eliminated as the biological father; in August, A.M. was confirmed as the biological father. C.S. eventually withdrew from the child's life.

The mother struggled with her substance-abuse problems throughout the juvenile proceedings. She was arrested on drug charges in the summer of 2018. She participated in several substance-abuse evaluations but did not follow through with recommended treatment, at times claiming her chronic pain medication precluded her participation in treatment. She missed other substance-abuse evaluations and delayed scheduling evaluations or waited until service workers scheduled them for her.

The mother initially attended recommended mental-health treatment for anxiety. An October 2017 mental-health evaluation diagnosed the mother with several additional mental-health issues. She stopped going to her therapy and, in June 2018, told service providers she did not like the available psychiatrists and wanted a medication prescription.

Throughout the case, reports from the Family Safety, Risk, and Permanency (FSRP) services worker indicated the mother delayed calling treatment programs, occasionally appeared to be under the influence of illegal substances, and was inconsistent in her efforts to parent the child.

Finally, in January 2019, as a requirement of her probation for forgery and drug convictions, the mother began an inpatient-treatment program. She tested positive for marijuana and amphetamines when admitted. While in the program, she participated in substance-abuse and mental-health counselling and did not test positive for illegal substances. She began family treatment court in February.

On March 6, the mother was discharged from the inpatient program for having an unauthorized vaping device in her room.[2] She began an outpatient treatment program following her discharge. The mother maintained sobriety through the termination hearing in April and made progress in her ability to care for the child.

Generally, the mother was not consistent in caring for and spending time with the child, even when both mother and child were staying at the maternal grandmother's house. The mother did not have consistent housing outside her parents' house. She was not employed at any point during the case, and was denied Social Security disability benefits. She did not have a driver's license or reliable transportation. Despite offers of help from FSRP, the mother expressed no interest in finding employment or obtaining her license until just before the termination hearing.

The termination hearing was held April 4. In May, the State petitioned to reopen the record to submit additional evidence. On June 28, another hearing with additional testimony was held. The mother had relapsed following the initial termination hearing. She had also missed multiple mental-health appointments and stopped attending family treatment court. The mother attributed her failure to attend appointments to her transportation difficulties.

On September 6, the court terminated the mother's parental rights under Iowa Code section 232.116(1)(h) (2019).[3] She appeals.

---

[2] The mother had been warned that she could not have the vaping device on the premises. She was six days shy of a successful discharge.

[3] The child was three years of age at the time of both termination hearings.

## II.    Standard of Review

We review termination-of-parental-rights cases de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  The paramount concern in termination proceedings is the best interests of the child.  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.    Analysis

On appeal, the mother does not contest the grounds for termination. Rather, she argues the court should have given her six more months to achieve reunification with her child and termination is not in the best interests of the child.

Because she does not dispute the existence of grounds for termination, we need not discuss this first step of our three-step analysis.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  Even after statutory grounds for termination have been established, "we must still determine whether termination is in the child['s] best interests.  *A.B.*, 815 N.W.2d at 776.  This requires considering the child's safety; the best placement to further the long-term nurturing and growth of the child; and the physical, mental, and emotional needs of the child.  Iowa Code § 232.116(2).  We also consider "the ability of the parent to properly care for the child and the presence of another family to provide the care."  *In re D.W.*, 791 N.W.2d 703, 708 (Iowa 2010).  The child deserves constant, responsible, and reliable parenting in a stable home.  *A.B.*, 815 N.W.2d at 777.

The child has been out of the mother's care since October 2017, and in the care of the maternal grandmother since January 2018.  The child has some special behavioral needs, and the grandmother has taken steps to set up necessary testing and care.  Throughout the juvenile proceedings, the mother has struggled to place the child's needs above her own, including a relapse a month after the

initial termination hearing. "We do not 'gamble with the child[ ]'s future' by asking them to continuously wait for a stable biological parent, particularly at such [a] tender age[ ]." *D.W.*, 791 N.W.2d at 707 (citation omitted). The record shows the mother has been unable to establish she can be a constant and reliable parent. We find termination is in the best interests of the child.

The mother claims the court should have granted her an additional six months to achieve reunification.[4] In order to grant an extension, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" that will occur leading the court to conclude the reasons removal will no longer exist in six months. Iowa Code § 232.104(2)(b). The mother has been offered services for more than three years, the child has been removed from the mother's care for two years, and recent signs of progress were followed in short order by the mother relapsing and ceasing to attend substance-abuse and mental-health treatment. The mother's inability to follow through with treatment and remain sober in the community throughout this case—in particular relapsing post-termination hearing—do not instill confidence in her ability to achieve the changes necessary for reunification with the child. *See A.B.*, 815 N.W.2d at 778 ("[E]vidence of the parent's past performance . . . may be indicative of the quality of the future care that parent is capable of providing." (citation omitted)). We find the evidence does not support an additional six months to work toward reunification.

**AFFIRMED.**

---

[4] The mother already received a six-month extension in September 2018.